IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | Case No.: 09-41244-RFN-11 |
| REYNOLDS ALASKA, L.L.C., | § | (Chapter 11) |
| | § | (Jointly Administered) |
| LARRY JAMES REYNOLDS, | § | |
| | § | |
| Debtors. | § | |

---

**FIRST AMENDED JOINT CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY REYNOLDS ALASKA, L.L.C. AND LARRY JAMES REYNODS, THE DEBTORS AND DEBTORS IN POSSESSION**

---

Joseph Postnikoff
State Bar No. 16168320
GOODRICH POSTNIKOFF &
ALBERTSON, LLP
777 Main Street, Suite 1360
Fort Worth, Texas 76102
Telephone: 817.335.9400
Telecopy: 817.335.9411


Counsel for Reynolds Alaska, L.L.C. and
Larry James Reynolds, Debtors and Debtors
in Possession

DATED: August 7, 2009.

Reynolds Alaska, L.L.C., ("Reynolds Alaska") and Larry James Reynolds ("Reynolds"), the Debtors and Debtors in Possession in these Chapter 11 cases, propose the following First Amended Joint Chapter 11 Plan of Reorganization (the "Plan") pursuant to § 1121(a) of the Bankruptcy Code.

## ARTICLE I.

## DEFINITIONS

**Defined Terms**. Unless the context otherwise requires, the following terms shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form in this Plan that is not defined herein but that is used in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code.

1.1. **Administrative Expense** means any cost or expense of administration of the Chapter 11 Case allowed under §§'s 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the estate of the Debtor, any actual and necessary expenses of operating the business of the Debtor, all compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under §§'s 330 or 503 of the Bankruptcy Code.

1.2. **Allowed** means, when used with respect to a Claim, a Claim (i) to the extent it is not Contested; or (ii) a Contested Claim, proof of which was filed timely with the Bankruptcy Court, and (A) as to which no objection was filed by the Objection Deadline, unless such Claim is to be determined in a forum other than the Bankruptcy Court, in which case such Claim shall not become Allowed until determined by Final Order of such other forum and allowed by Final Order of the Bankruptcy Court; or (B) as to which an objection was filed by the Objection Deadline, to the extent allowed by a Final Order. Allowed means, when used with respect to an Administrative Expense of a Professional, an Administrative Expense approved by application to the Bankruptcy Court.

1.3. **Bankruptcy Code** means the Bankruptcy Reform Act of 1978, as amended and codified at title 11 of the United States Code.

1.4. **Bankruptcy Court** means the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, or such other court having jurisdiction over all or any part of the Chapter 11 Case.

1.5. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 case, including applicable local rules of the Bankruptcy Court.

1.6. **Bar Date** means the last date established by the Bankruptcy Court for filing proofs of Claims in the Chapter 11 Cases, provided, however, that if the Bankruptcy Court has ordered an extension of the time by which a particular Creditor or holder of an Equity Interest may file a proof of Claim or proof of interest, the date set with respect to such Creditor or holder of an Equity Interest

shall be the Bar Date with respect to such Creditor or holder of an Equity Interest, but only as to such Creditor or holder of an Equity Interest.

1.7.     **Claim** means (a) a right of payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; and (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.8.     **Class** means all of the holders of Claims against the Debtor or of Equity Interests in the Debtor having characteristics substantially similar to the other Claims or Equity Interests which have been designated under the Plan.

1.9.     **Confirmation** means the entry by the Bankruptcy Court of the Confirmation Order.

1.10.    **Confirmation Date** means the date of entry of the Confirmation Order.

1.11.    **Confirmation Hearing** means the hearing or hearings which will be held before the Bankruptcy Court pursuant to § 1128 of the Bankruptcy Code and Bankruptcy Rule 3020(b) to consider Confirmation of the Plan.

1.12.    **Confirmation Order** means a Final Order of the Bankruptcy Court confirming the Plan in accordance with the provisions of Chapter 11 of the Bankruptcy Code.

1.13.    **Creditor** means a "Creditor" as defined in § 101(10) of the Bankruptcy Code.

1.14.    **Debtors** means Reynolds Alaska, L.L.C. and Larry James Reynolds, the Debtors and Debtors in Possession in the Chapter 11 cases.

1.15.    **Disclosure Statement** means the written statement, as amended, supplemented, or modified, from time to time, describing the Plan that is prepared and distributed in accordance with §§'s 1125, 1126(b), and 1145 of the Bankruptcy Code and Bankruptcy Rule 3018.

1.16.    **Disputed Claims Reserve** means the portion of Distributable Cash which will be reserved for holders of Contested Claims.

1.17.    **Distributable Cash** means the aggregate amount of Cash on Hand.

1.18.    **Effective Date** means the Business Day that is eleven days after the Confirmation Date if the Confirmation Order is not stayed prior to such date or, if the Confirmation Order is stayed, the first Business Day following the lifting, dissolution, or removal of such stay.

1.19.   **Estate** means the Estate created by § 541 of the Bankruptcy Code upon the commencement of the Case.

1.20.   **Final Order** means an order or judgment of the Bankruptcy Court or any other court or adjudicative body, as to which the time to appeal or seek rehearing or petition for certiorari shall have expired or which order or judgment shall no longer be subject to appeal, rehearing, or certiorari proceeding and with respect to which no appeal, motion for rehearing, or certiorari proceeding or stay shall then be pending.

1.21.   **Initial Distribution Date** means the first Business Day that is ten (10) days following the Effective Date.

1.22.   **Insider** means any person defined by the Bankruptcy Code as an insider of the Debtors(s).

1.23.   **Plan** means this chapter 11 plan of reorganization, either in its present form or as it may be altered, amended, or modified from time to time.

1.24.   **Priority Claim** means a Claim other than an Administrative Claim to the extent that it is entitled to priority in payment under § 507(a) of the Bankruptcy Code.

1.25.   **Priority Non-Tax Claim** means a Claim entitled to priority pursuant to §§'s 507(a)(1) - 507(a)(7) of the Bankruptcy Code.

1.26.   **Priority Tax Claim** means a Claim of a governmental unit of a kind specified in § 507(a)(8) of the Bankruptcy Code.

1.27.   **Rejection Claim** means a claim arising under § 502(g) of the Bankruptcy Code as a consequence of the rejection of any executory contract or unexpired lease.

1.28.   **Reynolds** means Larry Reynolds, the Debtor and Debtor in Possession in Case No. 09-42056-RFN-11.

1.29.   **Reynolds Petition Date** means April 6, 2009.

1.30.   **Reynolds Alaska** means Reynolds Alaska, L.L.C., the Debtor and Debtor in Possession in Case No. 09-41244-RFN-11.

1.31.   **Reynolds Alaska Petition Date** means March 2, 2009.

1.32.   **Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Debtors as required by § 521 of the Bankruptcy Code and Bankruptcy Rule 1007, as such schedules and statement have been or may be subsequently amended.

1.33. **Subordinated Claim** means (a) any Claim for indemnity, contribution, or reimbursement that is not Allowed on or before the Confirmation Date, (b) any Claim for penalties or punitive damages, and (c) any Claim subordinated under § 510 of the Bankruptcy Code.

1.34. **Unclaimed Funds** means any Cash, distribution, or any other property of the Debtor unclaimed for a period of one (1) year after the applicable distribution date as set forth in the Plan.

1.35. **Unsecured Claim** means a Claim of a Creditor that is not a Secured Claim or an Administrative or other Priority Claim.

## ARTICLE II.

## PROVISIONS FOR PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

2.1. **Administrative Expense Claims**. All payments to professionals retained pursuant to § 327 of the Bankruptcy Code for compensation and reimbursement of expenses will be made in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules and the Bankruptcy Court relating to the payment of interim and final compensation and expenses. The Bankruptcy Court will review and determine all such requests for compensation and reimbursement of expenses. Subject to certain additional requirements for professionals and certain other entities set forth in this section, the Debtors shall pay to each Holder of an Allowed Administrative Expense Claim, on account of its Administrative Expense Claim and in full satisfaction thereof, Cash equal to the amount of such Allowed Administrative Expense Claim on, or as soon as practicable after, the latter of the Effective Date and the day on which such Claim becomes an Allowed Claim, unless the Holder and the Debtors agree or shall have agreed to the other treatment of such Claim, or an order of the Bankruptcy Court provides for other terms; provided, that if incurred in the ordinary course of business or otherwise assumed by the Debtors pursuant to the Plan (including Administrative Expense Claims of governmental units for taxes), an Allowed Administrative Expense Claim will be assumed on the Effective Date and paid, performed or settled by the Debtors when due in accordance with the terms and conditions of the particular agreement(s) governing the obligation in the absence of the Chapter 11 Case. Following the Effective Date, any professional fees incurred by the Debtors may be paid without any requirement of further administration or approval by order by the Court.

2.2. **Priority Tax Claims**. Priority Tax claims are those Claims for taxes entitled to priority under § 507(a)(8) of the Bankruptcy Code. Each holder of an Allowed Priority Tax Claim shall be paid the amount of its Allowed Priority Tax Claim, together with (a) accrued and unpaid simple interest on the Allowed Priority Tax Claim from the due date of such Allowed Priority Tax Claim through the Effective Date at the statutory rate for such tax obligations, and (b) accrued and unpaid simple interest on the Allowed Priority Tax Claim from and after the Effective Date at six percent (6) per annum in deferred cash payment (the "Deferred Cash Payments") on or before the 5th anniversary of the Reynolds Petition Date or Reynolds Alaska Petition Date, as the case may be. The Deferred Cash Payments shall be equal monthly installment payments of principal and interest and shall be amortized over 48 months with the first of such Deferred Cash Payments due and owing on or before the Effective Date of the Plan and like payments due and owing monthly thereafter until

such time as the Allowed Priority Tax Claim is satisfied in full. Deferred Cash Payments made to the United States Department of Treasury, Internal Revenue Service ("IRS") on account of an Allowed Priority Tax Claim shall first be credited and applied to the trust portion of the Allowed Priority Tax Claim.

# ARTICLE III.

## CLASSIFICATION OF ALL
## CLASSES OF CLAIMS AND EQUITY INTERESTS

3.1. **Claims and Equity Interests**. The following is a designation of the classes of Claims and Equity Interests under the Plan. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class. A Claim or Equity Interest is in a particular Class only to the extent that the Claim is an Allowed Claim or Equity Interest in that Class. Reynolds Alaska and Reynolds shall maintain separate classes of creditors. Except as otherwise provided in the Plan or the Confirmation Order (i) creditors of Reynolds shall not look to Reynolds Alaska for payment of individual indebtedness of Reynolds nor shall creditors of Reynolds Alaska look to Reynolds for payment of indebtedness of Reynolds Alaska; and (ii) holders of Allowed Claims which are jointly and severally owed by both Reynolds Alaska and Reynolds shall be paid as set forth herein, but in no event shall such holder be entitled to a greater than single satisfaction.

For Reynolds Alaska, the following Class designations shall apply:

> Reynolds Alaska Class 1 — Priority Non-Tax Claims.

> Reynolds Alaska Class 2 — Secured Claims of Ad Valorem Tax Authorities.

> Reynolds Alaska Class 3 — Secured Claim of Polaris Acceptance.

> Reynolds Alaska Class 4 — Secured Claim of Worldwide Distributors.

> Reynolds Alaska Class 5 — Other Secured Claims.

> Reynolds Alaska Class 6 — Unsecured Claims.

> Reynolds Alaska Class 7 — Equity Interest Holders.

For Reynolds, the following Class designations shall apply:

> Reynolds Class 1 — Priority Non-Tax Claims.

> Reynolds Class 2 — Secured Claims of Ad Valorem Tax Authorities.

> Reynolds Class 3 — Secured Claim of Park National Bank.

<u>Reynolds Class 4 — Secured Claims of PlainsCapital Bank.</u>

<u>Reynolds Class 5 — Secured Claims of Independent Bank of Texas.</u>

<u>Reynolds Class 6 — Secured Claim of Chase Home Finance LLC.</u>

<u>Reynolds Class 7 — Secured Claim of Wells Fargo.</u>

<u>Reynolds Class 8 — Other Secured Claims.</u>

<u>Reynolds Class 9 — Unsecured Claims.</u>

<u>Reynolds Class 10 — Equity Interests.</u>

Administrative Expenses and Priority Tax Claims have not been classified (as set forth in Article 2 hereof) and are excluded from the foregoing classes in accordance with § 1123(a)(1) of the Bankruptcy Code.

3.2. **Unimpaired Classes of Claims and Equity Interests**. The following Classes are Impaired under the Plan: Reynolds Alaska Classes 3 through 6 and Reynolds Classes 3 through 9. Only Creditors in those Classes are entitled to vote and only their votes are being solicited to accept the Plan.

3.3. **Impaired Classes of Claims and Equity Interests**. With the exception of the unimpaired classes specified above, all classes of Claims are impaired under the Plan.

## ARTICLE IV.

## TREATMENT OF UNCLASSIFIED CLAIMS

4.1. **Full Settlement**. The distributions provided for in Section 2.1 hereof are in full settlement, release and discharge of all Administrative Expense Claims. The distributions provided for in Section 2.2. hereof are in full settlement, release and discharge of all Priority Tax Claims.

## ARTICLE V.

## TREATMENT OF CLASSIFIED CLAIMS AND EQUITY INTERESTS

Treatment of Classified Claims and Equity Interests of Reynolds Alaska:

5.1. **Reynolds Alaska Class 1 – Priority Non-Tax Claims**.

Description: Class 1 consists of all Priority Non-Tax Claims against Reynolds Alaska.

Treatment: On the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive (i) Cash in the amount of such Allowed Priority Non-Tax Claim in accordance with section 1129(a)(9) of the Bankruptcy Code and/or (ii) such other treatment, as determined by the Bankruptcy Court, required to render such Allowed Priority Non-Tax Claim unimpaired. All Allowed Priority Non-Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

### 5.2. **Reynolds Alaska Class 2 – Secured Claims of Ad Valorem Tax Authorities**.

Description: This class consists of the Claims of ad valorem tax authorities for 2008 and prior years which are Secured by property of the Estate of Reynolds Alaska.

Treatment: The Allowed Secured Claims of the Ad Valorem Tax Authorities, together with interest as it accrues thereon from the Petition Date through Confirmation at the applicable statutory rate and at the rate of 6% per annum from the Confirmation Date, shall be satisfied in full in a single payment which shall be due and owing on or before the Initial Distribution Date. The Ad Valorem Tax Authorities shall retain their liens until such time as their Allowed Secured Claims, together with interest as it accrues thereon under this Plan, have been satisfied in full.

### 5.3. **Reynolds Alaska Class 3 — Secured Claim of Polaris Acceptance**.

Description: This class consists of the Claim of Polaris Acceptance arising pursuant to that certain Inventory Financing Agreement dated August 14, 2008. The proof of claim filed by Polaris Acceptance reflects a claim of $559,672.45 secured by a first in priority purchase money lien against Polaris equipment, parts and accessories as well proceeds and a second in priority lien against all other non-titled personal property of Reynolds Alaska.

Treatment: The Allowed Secured Claim of Polaris Acceptance, together with interest as it accrues thereon from the Reynolds Alaska Petition Date at the non-default contract rate of interest, shall be satisfied as follows:

Floor Plan: As Reynolds Alaska sells snow machines and all terrain vehicles against which Polaris Acceptance holds a purchase money lien, Reynolds Alaska shall (a) within two days of the sale, provide to Polaris Acceptance an accounting of the sale including the name of the purchaser, the amount of the sale proceeds and the method of payment, and (b) within two days of the receipt of good sale proceeds from the purchaser, remit the higher of the actual sales price or the invoice price to Polaris Acceptance.

Inventory: With respect to the balance of the Allowed Secured Claim of Polaris Acceptance, Polaris Acceptance shall receive, at the option of Reynolds Alaska, either (a) the amount of such holder's remaining Allowed Secured Claim in one Cash payment on the Initial Distribution

Date, (b) the amount of such holder's remaining Allowed Secured Claim in sixty (60) equal monthly installment payments of principle and interest beginning on first day of the first full month following the Initial Distribution Date and continuing monthly thereafter until paid in full, (c) such other treatment as may be agreed to in writing by Polaris Acceptance and Reynolds Alaska, or (d) such other treatment as may be ordered by the Bankruptcy Court.

Reynolds Alaska shall retain the use of all manufacturer credits, including but not limited to rebates, holdbacks, refunds, warranty and advertising reimbursements received from Polaris Sales Inc. Polaris Acceptance shall retain all Pre and Post-Petition Liens until such time as its Allowed Secured Claim is satisfied in full.

### 5.4. **Reynolds Alaska Class 4 — Secured Claim of Worldwide Distributors**.

Description: This class consists of the Claim of Worldwide Distributors arising pursuant to that certain Worldwide Distributors Standard Terms and Conditions of Sale – Prospective Members Agreement ("Agreement") dated February 23, 2008. The proof of claim filed by Worldwide Distributors reflects a claim of $126,266.90 secured by a second in priority lien against Polaris inventory, parts and accessories and a first in priority lien against all other non-titled personal property of Reynolds Alaska.

Treatment: The Allowed Secured Claim of Worldwide Distributors, together with interest as it accrues thereon at the non-default contract rate of interest from the Reynolds Alaska Petition Date, shall be satisfied according to the following payment schedule:

a. $40,000 on or before June 15, 2009;
b. $40,000 on or before July 15, 2009; and
c. The balance of the Allowed Secured Claim on or before August 15, 2009.

Worldwide Distributors shall retain all Pre and Post-Petition Liens until such time as its Allowed Secured Claim is satisfied in full.

### 5.5. **Reynolds Alaska Class 5 – Other Secured Claims**.

Description: This class consists of the Claims of Creditors asserting Secured Claims against the Estate of Reynolds Alaska which are not otherwise classified under this Plan. Each holder of an Allowed Other Secured Claim shall be placed within a separate subclass of this Reynolds Alaska Class 5. Accordingly, each such Reynolds Alaska Class 5 Claim shall, for purposes of accepting or rejecting the Plan and for receiving distributions under the Plan, be treated as a separate Class.

Treatment: At the option of Reynolds Alaska, Reynolds Alaska will (a) notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of any Allowed Secured Claim to demand or receive accelerated payment of such claim after the occurrence of a default, leave unaltered and unimpaired the legal, equitable and contractual rights to which such claim entitled the holder thereof in accordance with Section 1124 of the Bankruptcy

Code and will cure any default by Reynolds Alaska in the payment of such claim, other than a default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) pay in full in cash to the holder thereof such allowed claim as soon as is practicable after such claim is allowed; (c) abandon the collateral securing such Claim to the holder thereof as soon as is practicable after such Claim is Allowed; (d) pay in full in 60 equal monthly installment payments of principal and interest as it accrues on the Allowed Secured Claim from date of Confirmation at the applicable contract rate of interest, with the first of such equal monthly installment payments due on or before the Initial Distribution Date and like payments due monthly thereafter until paid in full; or (e) provide such other treatment as the holder of the Claim and Reynolds Alaska may otherwise agree. The holder of an Other Secured Claim shall retain its lien on the collateral securing its Allowed Other Secured Claim until full payment has been made as provided herein. Any remaining deficiency claim of a Class 5 Creditor shall be treated as a Class 6 – Unsecured Claim.

5.6.    **Reynolds Alaska Class 6 – Unsecured Claims**.

Description:  This class consists of all Unsecured Claims against Reynolds Alaska.

Treatment:  Holders of Allowed Unsecured Claims shall be paid the full amount of their Allowed Claims, together with interest as it accrues thereon at the rate of 6% per annum from date of Confirmation, in seven (7) equal annual installment payments of principal and interest, the first of which payments shall be due and owing on the first Anniversary Date of the Initial Distribution Date and annually thereafter until satisfied in full.

5.7.    **Reynolds Alaska Class 7 – Equity Interest Holders**.  The holders of Equity Interests in Reynolds Alaska shall retain such Allowed equity interests from and after the Effective Date.

Treatment of Classified Claims and Equity Interests of Reynolds:

5.8.    **Reynolds Class 1 — Priority Non-Tax Claims**.

Description:  Class 1 consists of all Priority Non-Tax Claims against Reynolds.

Treatment:  On the Effective Date, except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment of such Allowed Priority Non-Tax Claim, each holder of an Allowed Priority Non-Tax Claim shall receive (i) Cash in the amount of such Allowed Priority Non-Tax Claim in accordance with section 1129(a)(9) of the Bankruptcy Code and/or (ii) such other treatment, as determined by the Bankruptcy Court, required to render such Allowed Priority Non-Tax Claim unimpaired. All Allowed Priority Non-Tax Claims which are not due and payable on or before the Effective Date shall be paid in the ordinary course of business in accordance with the terms thereof.

5.9.    **Reynolds Class 2 — Secured Claims of Ad Valorem Tax Authorities**.

Description: This class consists of the Claims of ad valorem tax authorities for 2008

and prior years which are Secured by property of the Estate of Reynolds.

Treatment: The Allowed Secured Claims of the Ad Valorem Tax Authorities, together with interest as it accrues thereon from the Petition Date through Confirmation at the applicable statutory rate and at the rate of 6% per annum from the Confirmation Date, shall be satisfied in full in a single payment which shall be due and owing on or before the Initial Distribution Date. The Ad Valorem Tax Authorities shall retain their liens until such time as their Allowed Secured Claims, together with interest as it accrues thereon under this Plan, have been satisfied in full.

### 5.10. **Reynolds Class 3 — Secured Claim of Park National Bank**.

Description: This class consists of the Secured Claim of Park National Bank ("PNB"). The proof of claim filed by PNB reflects a Secured Claim in the amount of $5,663,699.60 collateralized by a first in priority lien against certain real property situated in Tarrant County, Texas (as well as associated rents and profits) upon which the operations of C&S Boat and RV Storage as well as Mansfield Boat and RV Storage are conducted.

Treatment: Pursuant to Order entered June 29, 2009 [Docket No. 92] (hereinafter the "PNB Order") the Bankruptcy Court approved an agreement between Reynolds and PNB providing for the cure of Reynolds' Pre- and Post-Petition default under and reinstatement of the original PNB promissory note. The PNB Order was supplemented by an Order entered August 7, 2009 [Docket No. 99] (hereinafter the "Supplemental PNB Order"). The terms of the PNB Order and Supplemental PNB Order are hereby incorporated herein and adopted as the terms of treatment to be accorded PNB under the Plan.

### 5.11. **Reynolds Class 4 — Secured Claims of PlainsCapital Bank**.

Description: This class consists of the Secured Claims of PlainsCapital Bank ("PCB"). The proof of claim filed by PNB reflects a Secured Claim aggregating $4,350,690.02 arising pursuant to three promissory notes secured by liens against certain real property situated in Tarrant County, Texas (as well as associated rents and profits) commonly known as the I-20 Property and an aircraft and associated equipment described as an Israel Aircraft Industries Westwind II, Manufacturer's Serial Number 425, U.S. Registration No. N328SA (the "Aircraft").

Treatment: Pursuant to Order entered July 31, 2009 [Docket No. 96] (hereinafter the "PCB Order") the Bankruptcy Court approved an agreement between Reynolds and PCB providing for the resolution of the Secured Claims asserted by PCB. The terms of the PCB Order are hereby incorporated herein and adopted as the terms of treatment to be accorded PCB under the Plan. On or before the Effective Date of the Plan, PCB shall dismiss all lawsuits pending against Reynolds.

### 5.12. **Reynolds Class 5 – Secured Claims of Independent Bank of Texas**.

Description: This class consists of the Secured Claims of Independent Bank of Texas

("IBT"). The proof of claim filed by IBT reflects a Secured Claim aggregating $739,692.14 arising pursuant to two promissory notes. The Yacht Note was executed November 21, 2007 in the original principal amount of $700,000 and is collateralized by a vessel bearing Hull No. SERP5329D101. The Truck Note was executed April 24, 2007 in the original principal amount of $54,228.69 and is collateralized by a 2008 Ford F-450 Truck.

Treatment:  The Plan provides for the bifurcation and treatment of the Allowed Secured Claims of ITB as follows:

**Sub-Class 5-A [Yacht Note]**:  At the option of Reynolds, Reynolds will (a) notwithstanding any contractual provision or applicable non-bankruptcy law that entitles IBT to demand or receive accelerated payment of such claim after the occurrence of a default, leave unaltered and unimpaired the legal, equitable and contractual rights to which such claim is entitled in accordance with Section 1124 of the Bankruptcy Code and will cure any default by Reynolds in the payment of such claim, other than a default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) pay in full in cash to IBT as soon as is practicable after such claim is allowed; (c) abandon the collateral securing such Claim to IBT as soon as is practicable after such Claim is Allowed; (d) execute and deliver to IBT a new promissory note in an amount equal to the Allowed Secured Claim of IBT as of the Confirmation Date, which note shall provide for accrual of interest at the non-default contract rate from Confirmation Date and shall be payable (i) first, in fifty-nine (59) interest only monthly payments the first of which payments shall be due and owing on or before the Initial Distribution Date and like payments due monthly thereafter and (ii) second, with a sixtieth (60 and final payment of all principal and accrued interest then due and owing; or (e) provide such other treatment as IBT and Reynolds may otherwise agree.

**Sub-Class 5-B [Truck Note]**:  At the option of Reynolds, Reynolds will (a) notwithstanding any contractual provision or applicable non-bankruptcy law that entitles IBT to demand or receive accelerated payment of such claim after the occurrence of a default, leave unaltered and unimpaired the legal, equitable and contractual rights to which such claim is entitled in accordance with Section 1124 of the Bankruptcy Code and will cure any default by Reynolds in the payment of such claim, other than a default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) pay in full in cash to IBT as soon as is practicable after such claim is allowed; (c) abandon the collateral securing such Claim to IBT as soon as is practicable after such Claim is Allowed; (d) execute and deliver to IBT a new promissory note in an amount equal to the Allowed Secured Claim of IBT as of the Confirmation Date, which note shall provide for accrual of interest at the non-default contract rate from Confirmation Date and shall be payable in forty-eight (48) equal monthly installment payments of principal and interest, the first of which equal monthly payments shall be due and owing on or before the Initial Distribution Date with like payment due monthly thereafter until paid in full; or (e) provide such other treatment as IBT and Reynolds may otherwise agree.

IBT shall retain its Pre-Petition liens until its Allowed Secured Claims are satisfied in full.

5.13. **Reynolds Class 6 — Secured Claim of Chase Home Finance LLC**.

Description: This class consists of the Secured Claim of Chase Home Finance LLC, successor by merger to Chase Manhattan Mortgage Corporation ("Chase"). The proof of claim filed by Chase reflects a Secured Claim of $614,764.04 collateralized by a first in priority lien against Reynolds' residence in Valdez, Alaska described as Lot 10A, Block 3, Robe Lake Subdivision, according to the official plat thereof, filed under plat number 2005-2, Records of the Valdez Recording District, Third Judicial District, State of Alaska (the "Residence").

Treatment: At the option of Reynolds, Reynolds shall (a) notwithstanding any contractual provision or applicable non-bankruptcy law that entitles Chase to demand or receive accelerated payment of such claim after the occurrence of a default, leave unaltered and unimpaired the legal, equitable and contractual rights to which such claim is entitled in accordance with Section 1124 of the Bankruptcy Code and will cure any default by Reynolds in the payment of such claim, other than a default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) pay in full in cash to Chase as soon as is practicable after such claim is allowed; (c) abandon the collateral securing such Claim to Chase as soon as is practicable after such Claim is Allowed; (d) execute and deliver to Chase a new promissory note in an amount equal to the Allowed Secured Claim of Chase as of the Confirmation Date, which note shall provide for accrual of interest at the non-default contract rate from Confirmation Date and shall be payable (i) first, in fifty-nine (59) interest only monthly payments the first of which payments shall be due and owing on or before the Initial Distribution Date and like payments due monthly thereafter and (ii) second, with a sixtieth (60 and final payment of all principal and accrued interest then due and owing; or (e) provide such other treatment as Chase and Reynolds may otherwise agree. Chase shall retain its Pre-Petition lien until its Allowed Secured Claim is satisfied in full.

5.14. **Reynolds Class 7 — Secured Claim of Wells Fargo**.

Description: This class consists of the Secured Claim of Wells Fargo in the approximate amount of $502,020.55 secured by a second in priority lien against Reynolds' Residence.

Treatment: At the option of Reynolds, Reynolds shall (a) notwithstanding any contractual provision or applicable non-bankruptcy law that entitles Wells Fargo to demand or receive accelerated payment of such claim after the occurrence of a default, leave unaltered and unimpaired the legal, equitable and contractual rights to which such claim is entitled in accordance with Section 1124 of the Bankruptcy Code and will cure any default by Reynolds in the payment of such claim, other than a default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) pay in full in cash to Wells Fargo as soon as is practicable after such claim is allowed; (c) abandon the collateral securing such Claim to Wells Fargo as soon as is practicable after such Claim is Allowed; (d) execute and deliver to Wells Fargo a new promissory note in an amount equal to the Allowed Secured Claim of Wells Fargo as of the Confirmation Date, which note shall provide for accrual of interest at the non-default contract rate from Confirmation Date and shall be payable (i) first, in fifty-nine (59) interest only monthly payments the first of which payments shall be due and owing on or before the Initial Distribution Date and like payments due monthly thereafter and (ii)

second, with a sixtieth (60 and final payment of all principal and accrued interest then due and owing; or (e) provide such other treatment as Wells Fargo and Reynolds may otherwise agree. Wells Fargo shall retain its Pre-Petition lien until its Allowed Secured Claim is satisfied in full.

### 5.15. **Reynolds Class 8 — Other Secured Claims**.

Description: This class consists of the Claims of Creditors asserting Secured Claims against the Estate of Reynolds which are not otherwise classified under this Plan. Each holder of an Allowed Other Secured Claim shall be placed within a separate subclass of this Reynolds Class 8. Accordingly, each such Reynolds Class 8 Claim shall, for purposes of accepting or rejecting the Plan and for receiving distributions under the Plan, be treated as a separate Class.

Treatment: At the option of Reynolds, Reynolds will (a) notwithstanding any contractual provision or applicable non-bankruptcy law that entitles the holder of any Allowed Secured Claim to demand or receive accelerated payment of such claim after the occurrence of a default, leave unaltered and unimpaired the legal, equitable and contractual rights to which such claim entitled the holder thereof in accordance with Section 1124 of the Bankruptcy Code and will cure any default by Reynolds Alaska in the payment of such claim, other than a default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (b) pay in full in cash to the holder thereof such allowed claim as soon as is practicable after such claim is allowed; (c) abandon the collateral securing such Claim to the holder thereof as soon as is practicable after such Claim is Allowed; (d) pay in full in 60 equal monthly installment payments of principal and interest as it accrues on the Allowed Secured Claim from date of Confirmation at the applicable contract rate of interest, with the first of such equal monthly installment payments due on or before the Initial Distribution Date and like payments due monthly thereafter until paid in full; or (e) provide such other treatment as the holder of the Claim and Reynolds Alaska may otherwise agree. The holder of an Other Secured Claim shall retain its lien on the collateral securing its Allowed Other Secured Claim until full payment has been made as provided herein. Any remaining deficiency claim of a Class 8 Creditor shall be treated as a Class 9 – Unsecured Claim.

### 5.16. **Reynolds Class 9 — Unsecured Claims**.

Description: This class consists of all Unsecured Claims against Reynolds.

Treatment: Holders of Allowed Unsecured Claims shall be paid the full amount of their Allowed Claims, together with interest as it accrues thereon at the rate of 6% per annum from date of Confirmation, in seven (7) equal annual installment payments of principal and interest, the first of which payments shall be due and owing on the first Anniversary Date of the Initial Distribution Date and annually thereafter until satisfied in full.

### 5.17. **Reynolds Class 10 – Equity Interests**. Equity Interests shall not be affected by the confirmation of this Plan. On the Effective Date all property owned by the Reynolds Estate will revest in Reynolds.

# ARTICLE VI.

## ACCEPTANCE OR REJECTION OF PLAN

6.1. **Classes Entitled to Vote**. Each impaired class of Claims or Interests shall be entitled to vote separately to accept or reject the Plan. Any Unimpaired Class of Claims or Interests as defined herein shall not be entitled to vote to accept or reject the Plan.

6.2. **Class Acceptance Requirement**. A Class of Claims or Interests shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in amount and more than one-half (1/2) in number of the Allowed Claims or Interests in such Class that have voted on the Plan.

## ARTICLE VII.

## MEANS OF IMPLEMENTATION AND
## GENERAL DESCRIPTION OF THE PLAN

7.1. **Assumption of Liabilities.** Except as otherwise provided herein, the Debtors shall assume liability for and the obligations to make the distributions required to be made under Article V. of the Plan as specifically provided.

7.2. **Allowance of Contested Claims.** All claims which are not Contested shall be considered Allowed. A Claim may be Contested by the filing of an Objection or a complaint in connection with an adversary matter. The Claim shall only be considered Allowed as defined in Article 1 of this Plan.

7.3. **Reclamation Rights**. Any Reclamation Right is unaffected. Nothing contained in the Plan shall waive or impair any defense to any Reclamation Rights. Until a Final Order is entered granting reclamation, the Claim of any Creditor with a potential Reclamation Right shall be treated as an Unsecured Claim. Upon entry of a Final Order granting reclamation, the Claim shall thereafter be treated and paid as an Administrative Expense to the extent reclamation is allowed; provided, however, any distributions made on account of the Claim as an Unsecured Claim shall be credited before determining the amount of the Allowed Administrative Expense.

7.4. **Revesting of Assets**. Except as otherwise provided in the Plan or the Confirmation Order, upon the Effective Date, all Assets shall vest in, or remain the property of, the respective Debtors previously owning the property, free and clear of all Claims.

7.5. **Injunction.** From and after the Confirmation Date, all holders of "Claims" (including, without limitation, Secured Claims, Unsecured (General) Claims, and all Priority Claims) against the Debtors are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Assets, or Debtors, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtors, or the Assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, or the Assets, (d) from

asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan.

7.6. **Revocation of Plan.** The Debtors have reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtors revoke or withdraw this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtors, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtors, as the case may be, or Person in any further proceedings involving such Debtors.

7.7. **Late Filed Claims; Amendment to Claims.** The Plan and associated documents shall not impair any Creditor's right to seek leave to file a proof of claim after the Bar Date pursuant to Bankruptcy Rule 9006(b)(1), or the Debtors right to contest such relief. Any Creditor granted leave by the Bankruptcy Court to file a late proof of claim under Bankruptcy Rule 9006(b)(1) shall thereafter be classified and treated under the appropriate Class in the Plan and shall in all respects be bound by the terms of the Plan. No amendment or supplementation shall be made or filed as to any proof of claim after the applicable Bar Date without first obtaining leave from the Bankruptcy Court.

## ARTICLE VIII.

## PROCEDURES FOR RESOLVING AND TREATING
## CONTESTED AND CONTINGENT CLAIMS

8.1. **Objection Deadline.** Unless a different date is set by order of the Bankruptcy Court, all objections to Claims shall be served and filed by sixty (60) days after the Effective Date or sixty (60) days after a particular proof of Claims is filed, whichever is later. Unless arising from an Avoidance Action, any proof of claim filed more than thirty (30) days after the Effective Date shall be of no force and effect and need not be objected to. All Contested Claims shall be litigated to Final Order; provided however, that the Debtors may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court.

8.2. **Responsibility for Objecting to Claims.** Debtors shall have the responsibility for objecting to the allowance of Claims following the Effective Date; provided, however, any party in interest shall be permitted to object to claims.

8.3. **Distributions on Account of Contested Claims.** Notwithstanding any other provision of the Plan, no payment or distribution shall be made with respect to any Contested Claim unless and until such Contested Claim becomes an Allowed Claim.

8.4. **Disputed Claims Reserve.** In determining the amount of distributions to be made under the Plan to holders of Allowed Claims, the appropriate distributions required by the Plan shall be made according to estimates and subject to the provisions of the Plan. To protect the interest of holders of Contested Claims, the Disputed Claims Reserve shall be established on or prior to the

Effective Date. Except as otherwise provided in the Plan, on the eleventh day following the Effective Date and monthly thereafter as may be required, the Debtors shall deposit in the Disputed Claims Reserve Cash in an amount that represents the distribution of the Cash that would otherwise be distributed to holders of Contested Claims if such Claims were Allowed.

8.5. **Distribution After Allowance.** As soon as practicable after a Contested Claim becomes an Allowed Claim, the holder of an Allowed Claim shall receive a distribution in an amount equal to the aggregate of all the distributions which such holder would have received had such Contested Claim been an Allowed Claim on the Effective Date. Distributions to each holder of a Contested claim, to the extent that such Claim becomes an Allowed Claim, shall be made in accordance with the provisions of the Plan governing the Class of Claims to which such Claim belongs. The Debtors shall have the right to make or direct the making of all distributions to the holders of Allowed Claims. No interest shall be paid on account of a Contested Claim which later becomes an Allowed Claim.

## ARTICLE IX.

## PROVISIONS GOVERNING DISTRIBUTION

9.1. **Distributions to be Made by Debtors.** Unless expressly provided in the Plan or the Confirmation Order, distributions to Creditors required pursuant to the Plan shall be made by the Debtors.

9.2. **Means of Cash Payment.** Payments of Cash to be made by the Debtors pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

9.3. **Delivery of Distributions.** Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the Proofs of Claim filed by such holders (or at the last known addresses of such holders if no Proof of Claim is filed or if the Debtors have been notified in writing of a change of address). If any holder's distribution is returned as undeliverable, no further distributions to such holder shall be made unless and until the Debtors are notified of such holder's then current address, at which time all missed distributions shall be made to such holder without interest. All claims for undeliverable distributions shall be made on or before the one-year anniversary of the distribution of the Creditor that was undeliverable. After such date, the amount of such undeliverable distributions shall become an asset available to the Debtors and the Creditors entitled to the undeliverable distributions shall have no further rights or entitlements to the undeliverable distributions.

9.4. **Time Bar to Cash Payments.** Checks issued by the Debtors on account of Allowed Claims shall be null and void, if not cashed within ninety (90) days of the date of issuance thereof. Requests for reissuance of any check shall be made directly to the Debtors by the holder of the Allowed Claim with respect to which such check originally was issued. Any claim in respect of such a voided check shall be made on or before the later of the first anniversary of the eleventh day following the Effective Date or ninety (90) days after the date of the issuance of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred and the subject

funds shall become an asset available to the Debtors.

## ARTICLE X.

## EXECUTORY CONTRACTS AND LEASES

10.1.  **General Treatment - Assumed If Not Rejected.**  The Plan constitutes and incorporates a motion by the proponent to assume, as of the Confirmation Date, all prepetition executory contracts and unexpired leases to which the Debtors are a party, except for executory contracts or unexpired leases that (a) have been assumed or rejected pursuant to Final Order of the Bankruptcy Court, or (b) are the subject of a separate motion filed pursuant to § 365 of the Bankruptcy Code by the Chapter 11 Debtors prior to the Effective Date.  At least ten (10) days prior to the objection deadline for the Confirmation Hearing, the Debtors shall serve upon all Creditors and Parties in Interest, via United States first class mail, a Schedule of Executory Contracts and Unexpired Leases to be Assumed or Rejected by the Debtors pursuant to paragraph 10.1 of the Plan. Such Schedule of Executory Contracts and Unexpired Leases to be Assumed or Rejected by the Debtors shall also include the cure amount and proposed cure schedule with respect to each Executory Contract and/or Unexpired Lease to be assumed at the Confirmation Hearing.  All contracts between Reynolds Alaska and any customer shall be assumed except as specifically rejected.

10.2.  **Bar to Rejection Damages.**  If the rejection of an executory contract or an unexpired lease results in damages to the other party to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors no later than thirty (30) days after the Confirmation Date.

## ARTICLE XI.

## ANTICIPATED LITIGATION

Unless expressly released, waived, compromised or transferred by the Debtors, as appropriate, after Bankruptcy Court approval, the Debtors shall retain, and prosecute as appropriate all causes of action belonging to the estate pursuant to § 541 of the Bankruptcy Code, including but not limited to Avoidance Actions pursuant to §§'s 544, 545, 546, 547, 548, 549, 550, 551, or 553(b) of the Bankruptcy Code.  All creditors and parties in interest are hereby placed on notice that despite provisions which may be contained in this Plan providing for satisfaction of claims, if Allowed, the Debtors reserve the right, as advised by counsel, to (a) commence, prosecute to judgment, and to collect upon any cause of action owned or managed by such entity, whether or not such cause of action is listed in the Schedules or Statement of Affairs as an asset of the estate of the Debtors and to (b) include as defendants in a suit any and all parties which are, at this time, named and unnamed. Currently, the Debtors are unable to estimate the size of any recovery from such a lawsuit.  The Debtors are authorized under the Plan, in its sole discretion, to litigate to final judgment, prosecute appeals as are necessary and enter into such settlement agreements as are deemed appropriate with respect to any and all suits initiated as provided herein.  Persons subject to a successful Avoidance Action may file a Claim, as appropriate, within such time as is established by the Bankruptcy Court.

ANY PERSON IDENTIIFED ON THE STATEMENTS OF FINANCIAL AFFAIRS, INCLUDING BUT NOT LIMITED TO RESPONSES TO ITEM NO. 3, ARE HEREBY NOTICED THAT YOU MAY BE SUBJECT TO THE AVOIDANCE OF THAT PAYMENT PURSUANT TO THE CODE SECTIONS STATED IN THE PRIOR PARAGRAPH. AS A RESULT OF THE PAYMENTS THAT YOU RECEIVED, YOU MAY BE SUBJECT TO A FUTURE LAWSUIT.

## ARTICLE XII.

## RESOLUTION OF PENDING LITIGATION

Except as otherwise provided herein, there is no pending litigation proposed to be resolved pursuant to the Plan other than through the claims reconciliation process outlined in Article VIII. of the Plan. The Debtors retain the respective rights to pursue any and all causes of action that may exist as of the Effective Date. The confirmation of this Plan shall not be construed to waive any cause of action of the Debtors.

## ARTICLE XIII.

## RELEASES AND WAIVERS

13.1. General Discharge of and Release From Claims and Interests. Except with respect to Classes of Claims unimpaired pursuant to the Plan, the distributions and rights afforded in the Plan shall be in complete and full satisfaction, discharge and release, effective as of the Effective Date, of all Claims against and interests in the Debtors or any of its assets or properties of any nature whatsoever. **Commencing on the Effective Date, except as expressly otherwise provided in the Plan, all Claim holders and interest holders shall be precluded forever from asserting against the Debtors, assets and properties of the Debtors, any other or further liabilities, liens, obligations, Claims or equity interests, including but not limited to, all principal and accrued and unpaid interest and penalties on the debts of the Debtors, based on any act or omission, transaction or other activity or security interest or other agreement of any kind or nature occurring, arising or existing prior to the Effective Date, that was or could have been the subject of any Claim or interest, whether or not Allowed, except with respect to Claims in Classes unimpaired pursuant to this Plan. As of the Effective Date, the Debtors shall be discharged and released from and shall hold all the assets and properties received or retained by it pursuant to this Plan, free of all liabilities, liens, Claims and obligations or other claims of any nature, including but not limited to, equity interests, known or unknown, except as provided in the Plan and Claims in Classes unimpaired pursuant to this Plan. All legal or other proceedings and actions seeking to establish or enforce liabilities, liens, Claims and equity interests or obligations of any nature against the Debtors or assets or properties received or retained by the Debtors with respect to debts and obligations, if any, of the estate arising before the Effective Date shall be permanently stayed or enjoined, except as otherwise specifically provided in this Plan.**

# ARTICLE XIV.

## RETENTION OF JURISDICTION

14.1. **Jurisdiction Generally.** Pursuant to §§'s 1334 and 157 of title 28 of the United States Code, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising in, arising under, and related to the Chapter 11 Case and the Plan, for the purposes of §§'s 105(a) and 1142 of the Bankruptcy Code.

14.2. **Specific Jurisdiction.** The Bankruptcy Court shall retain exclusive jurisdiction for, among other things, the following purposes:

1. to hear and determine all Claims and Objections to Claims, including Claims arising from the rejection of any executory contract or unexpired lease and any Objections which may be made thereto;

2. to liquidate or estimate the amount or determine the manner and time for such liquidation or estimation in connection with any contingent or unliquidated Claim;

3. to adjudicate all claims and controversies arising during the pendency of the Case;

4. to allow or disallow any Fee Claim and any request for compensation or reimbursement of expenses by a professional related to post-confirmation services;

5. to enter any orders which may be necessary and appropriate to carry out and enforce the provisions of the Plan;

6. to determine any defaults under the Plan and the consequences of such defaults;

7. to determine and resolve any motions to revoke Confirmation or to convert or dismiss the Case;

8. to resolve any disputes over the meaning of any provision of the Plan;

9. to determine and allow amendments or modifications to the Plan;

10. to hear and determine any and all adversary proceedings, applications, or contested matters, including any remands or appeals;

11. to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

12. to enable the Debtors to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which the Debtors may be entitled under applicable provisions of the Bankruptcy Code or

any other federal, state or local laws, including causes of action, controversies, disputes and conflicts between the Debtors and any other party, including but not limited to, the retained Causes of Action and Avoidance Actions;

13.     to hear and determine any other matter not inconsistent with the Bankruptcy Code and title 28 of the United States Code that may arise in connection with or related to the Plan; and

14.     to enter a Final Decree pursuant to § 350 of the Bankruptcy Code and Bankruptcy Rule 3022.

14.3.     **Abstention and Other Courts.** If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of or relating to this Chapter 11 Case, Article XIV of the Plan shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

# ARTICLE XV.

## MISCELLANEOUS PROVISIONS

15.1.     **Right of Setoff - Debtors.** The Debtors may, but shall not be required to, set off against any Claim and the payment or other distributions to be made pursuant to this Plan in respect of such Claim, fully liquidated, non-contingent Claims of any nature whatsoever the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such Claim that the Debtors may have against such holder.

15.2.     **Right of Setoff - Creditor.** Any Creditor of the Debtors that has not sought and received consent to setoff an obligation of the Debtors as of the Confirmation of the Plan shall be deemed to have waived the right to setoff against the pre-petition debt owed by the Debtors and shall be contractually bound to accept the treatment set forth in the Plan.

15.3.     **Compliance With All Applicable Laws.** If notified by any governmental authority that it is in violation of any applicable law, rule, regulation, or order of such governmental authority relating to its business, the Debtors shall comply with such law, rule, regulation, or order; provided that nothing contained herein shall require such compliance if the legality or applicability of any such requirement is being contested in good faith in appropriate proceedings and, if appropriate, an adequate reserve has been set aside on the books of the Debtors.

15.4.     **Binding Effect.** The Plan shall be binding upon, and shall inure to the benefit of the Debtors and the holders of Claims and their respective successors and assigns.

15.5.     **Governing Law.** Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, the internal laws of the State of

Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

15.6. **Payment of Statutory Fees.** All fees payable pursuant to § 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the hearing pursuant to § 1128 of the Bankruptcy Code, shall be paid on or before the Effective Date.

15.7. **Timing of Distributions.** Any payment or distribution required to be made hereunder on a day other than a Business Day shall be due and payable on the next succeeding Business Day.

15.8. **Post Confirmation Notices.** After the Confirmation Date, unless otherwise directed by the Bankruptcy Court, notice of any motion creating a contested matter shall be given under the 20-day provision under Local Bankruptcy Rule 9014 to the parties on the service list maintained by the Debtors that may be amended or supplemented to include any party in interest requesting notice.

Dated this 7th day of August, 2009.

Respectfully submitted,

GOODRICH POSTNIKOFF &
ALBERTSON, LLP
777 Main Street, Suite 1360
Fort Worth, Texas 76102
Telephone: 817.335.9400
Telecopy: 817.335.9411

By:   / Joseph F. Postnikoff
        Joseph F. Postnikoff
        State Bar No. 16168320

COUNSEL FOR DEBTORS IN POSSESSION